FILED

2015 Aug-28  PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**R. JAMIE RUHL,** |
|
Plaintiffs, |
|
v. | **Civil Action Number**
| **5:15-cv-00742-AKK**
**CATHI SPEAR, et al.,** |
|
Defendants. |

## MEMORDANDUM OPINION

Plaintiff R. Jamie Ruhl brings this action against Defendants Judge Brent Craig, Judge Charles Langham, Chief Justice Roy Moore (collectively "the judicial defendants"), Alabama Attorney General Luther Strange, and Cathi Spear. In a nutshell, Ruhl alleges that the defendants formed a judicial conspiracy to deprive him of his constitutional rights. Although the structure and reach of the purported conspiracy are not entirely discernable from Ruhl's pleadings, it allegedly stems from Judge Lantham's order modifying a preexisting child support agreement between Ruhl and Spear. All of the defendants have filed motions to dismiss, docs. 7 and 14, that are fully briefed, docs. 12, 13, 16, 17, 19, and 20[1] and ripe for

---

[1] The court did not consider documents 19 and 20 in ruling on the defendants' motions because the parties failed to move for permission to file additional briefs.

review. Additionally, Ruhl has filed a motion to stay the action.[2] Doc. 12. For the reasons stated below, the motions are **GRANTED**.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6) the court accepts all factual allegations as true. *See, e.g., Grossman v. Nations Bank, N.A.*, F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that

---

[2] Additionally, Spear moves to sanction Ruhl in her motion to dismiss. Doc. 7 at 5–7. Because "[a] motion for sanctions must be made separately from any other motion," Fed. R. Civ. P. 11(c)(2), the court will not consider the motion for sanctions.

presumption of truth. *Iqbal*, 556 U.S. at 664. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. FACTUAL BACKGROUND

The following is an account of the Ruhl's allegations, accepted as true, that are pertinent to the resolution of the defendants' motion. Ruhl and Spear are the parents of a minor child. Doc. 1 at 3. Ruhl filed a paternity suit in Tennessee, and the trial court entered a child custody order in May 2008. Spear subsequently moved to Alabama, and sought a modification to the support order in January 2010. *Id.* at 4. In October 2010, Judge Langham entered an order in the Morgan County Juvenile Court, incorporating standard visitation into the child custody

order, which was later reversed and dismissed for lack of subject matter jurisdiction on appeal. *Id.* at 4–5; *see* doc 14-4 at 2. Spear subsequently filed another petition to modify the child custody order in the same court, which Judge Craig granted. *Id.* at 5. In June 2012, Ruhl filed a lawsuit against Spear, Judge Langham, Judge Craig, and others. Doc. 14-1 at 1-2. After the court dismissed that case, doc. 14-2 at 5, Ruhl filed a lawsuit against Spear and others in the Southern District of Ohio, which the court dismissed in April 2012. Doc. 14-6. Ruhl filed a second Ohio lawsuit, this time including Judge Craig, Judge Langham, and Luther Strange, in July 2013, which the court dismissed in August 2014. Doc. 14-4 at 4. All three of these suits essentially alleged the existence of a conspiracy among the judges, attorneys, and Spear.

## III. ANALYSIS

In this lawsuit, Ruhl brings claims of violations of 42 U.S.C. § 1983 (Count I), violations of 42 U.S.C. § 1985 (Count II), unjust enrichment (Count III), interference with custody (Count IV), violation of child support (Count V), false imprisonment (Count VI), intentional infliction of emotional distress (Count VII), and failure to enforce child support obligations (Count VIII).[3] Doc. 1. Counts I, II,

---

[3] Ruhl's complaint also includes a count of "negligent infliction of emotional distress" (Count IX), which does not exist under Alabama law. *See Gideon v. Norfolk S. Corp.*, 633 So. 2d 453, 454 (Ala. 1994).

IV and VII are brought against Judge Craig, Judge Langham, and Spear[4]. Count VI is solely against Judge Craig and Judge Langham, while Counts III and V are solely against Spear. Count VIII is brought against the judicial defendants as well as the Attorney General. Ruhl seeks monetary damages as well as a laundry list of preliminary injunctions. Ruhl's claims are due to be dismissed in their entirety for a number of reasons, which the court will discuss below.

### A. The Court Lacks Jurisdiction under the Rooker-Feldman Doctrine

The federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Among the restrictions placed on federal courts is the *Rooker-Feldman* doctrine, which prohibits federal courts from exercising jurisdiction over "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In order for the doctrine to apply, four factors must be met: (1) the party in federal court is the same as the party in state court, *see Roe v. Alabama* 43 F.3d 574, 580 (11th Cir. 1995); (2) the prior state court ruling was a final or conclusive ruling on the merits, *see David Vincent, Inc. v. Broward*

---

[4] Generally, a plaintiff cannot bring a § 1983 claim (Count I) against a private individual. However, "private defendants can be held liable in a § 1983 action if they act in concert with the state officials in depriving a plaintiff of his constitutional rights." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (internal citations omitted).

*County*, 200 F.3d 1325, 1332 (11th Cir. 2000); (3) the party seeking relief in federal court had a reasonable opportunity to raise its claims in the state court proceeding, *see Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997); and (4) the issue before the court was either adjudicated before the court or was inextricably intertwined with the state court's judgment, *see Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).

Ruhl does not contest the first three factors, but rather contends that the constitutional violations he alleges are not inextricably intertwined with the state court judgment. "A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* Counts I, II, IV, V, VI, and VII all essentially allege that Ruhl was harmed by the state court rulings. If the court were to hold in Ruhl's favor on these claims of constitutional violations and grant his desired relief, it would effectively nullify the state court's judgment setting the original custody order. *See Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) (holding that federal court did not have jurisdiction over plaintiff's claim that state court ruling was an unconstitutional taking because it was inextricably intertwined with state court awarding his wife part of his retirement). "Even if the federal court collateral attack on the state court judgment is premised on the unconstitutionality of a federal statute," as Ruhl's is, "the *Rooker-Feldman* doctrine still applies." *Id.*

Ruhl's attempts to persuade the court that an exception applies to his claims are unavailing. His reliance on *In re Suns Valley Food Co.*, 801 F.2d 186 (6th Cir. 1987), for the proposition that the alleged fraudulent conspiracy surrounding the state law judgment bypasses the *Rooker-Feldman* doctrine, fails because the Eleventh Circuit explicitly has declined to adopt the exception he seeks. *See Velazquez v. S. Fla. Fed. Credit Union*, No. 12-15222, 2013 WL 5977166 at *4 (11th Cir. 2013). Likewise, Ruhl's contention that *Rooker-Feldman* abstention is inappropriate here because *Rooker* sought relief solely in equity, while Ruhl seeks relief in law and equity, is meritless. *See* Fed. R. Civ. P. 2 ("There is one form of action–the civil action."). Accordingly, Counts I, II, IV, V, VI, and VII are due to be dismissed because the court lacks jurisdiction over them.

Alternatively, even if *Rooker-Feldman* absention does not apply, the claims still fail.

### B. Ruhl's § 1983 and § 1985 Claims are Time-Barred

Ruhl's § 1983 and § 1985 claims are due to be dismissed because of the two year statute of limitations. "Under the discovery accrual rule, the discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *see also Rasheed v. McNamara*, No. CIV.A.1:08CV0622TWT, 2008 WL 594763 at *3 (N.D. Ga. 2008) (applying discovery accrual rule to § 1983 claim). Relevant here, it is undisputed that Ruhl

first filed suit against Judge Craig and Judge Langham in this court in June 2012, doc. 14-1 at 1–2, at which time he was aware of the defendants' alleged wrong-doing, and that Judge Craig signed the custody order Ruhl claims is the source of his injuries in September 2012, at which time the statute of limitations began to run, doc. 14-5 at 3. In other words, the statute of limitations for Ruhl's claims expired in September 2014, seven months before Ruhl initiated the present matter.

To get around the statute, Ruhl contends that his claims are still timely because he suffers continuing violations of his rights, or alternatively, that the court should equitably toll the statute of limitations because he mistakenly filed the claim in Ohio. "Equitable tolling is an extraordinary remedy which is typically applied sparingly." *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (citing *Irwin v. Dep't of Veteran's* Affairs, 498 U.S. 89, 96 (1990)). It is not warranted here because Ruhl had already filed lawsuits in the northern district of Alabama before filing his Ohio suit, docs. 14-1, 14-3, and either knew or should have known that Ohio would be an improper venue. *See Irwin*, 498 U.S. at 96 ("Principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect."). Next, with respect to the continuing violation contention, the crux of Ruhl's continuing harm assertion is that courts will apply the same standard he challenges in any action he hypothetically might bring in the future. "In determining whether to characterize a violation as 'continuing,' it is important

to distinguish between the 'present consequence of a one-time violation' which does not extend the limitations period, and 'a continuation of a violation into the present,' which does." *Nat'l. Parks & Conservation Assoc., Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982)). The alleged violations of Ruhl's First, Fifth, Ninth, and Fourteenth Amendment rights stem solely from the state court ruling he seeks review of and the deprivations of his rights that he alleges it caused. The fact that a subsequent case would apply the same legal standards and potentially yield the same result does not cause this harm to continue into the future. Therefore, Counts I and II are due to be dismissed in their entirety.

### C. Ruhl Does Not Have Standing to Pursue Criminal Claims

Ruhl alleges in Counts IV and V that the defendants have violated Alabama Code § 13A-6-35 and the Child Enforcement Support Act of 1992, which constitute felonious injuries. However, as a private citizen, Ruhl "lacks a judicially cognizable interest in the prosecution or nonprosecution of another," and consequently lacks standing to bring criminal claims in court. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Ruhl's reliance on Alabama Code § 6-5-370 to create standing for him to bring these criminal charges in a civil suit is unavailing because the statute does not create a cause of action for a private citizen, but merely allows a plaintiff to commence a civil action independent of

any criminal prosecution of the defendant or lack thereof. *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d. 1267, 1274 (M.D. Ala. 2010). Accordingly, Counts IV and V are due to be dismissed.

### D. Ruhl Cannot Show Intentional Infliction of Emotional Distress

Ruhl contends in Count VII that the defendants' actions constitute intentional infliction of emotional distress, also known as the tort of outrage. However, under Alabama law, "the tort of outrage is available only in the most egregious of circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). Indeed, conduct rising to the level of outrage must be "so extreme and outrageous in degree 'as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in civilized society.'" *Moore v. Spiller Associated Furniture, Inc.*, 598 So. 2d 835, 837 (Ala. 1992) (quoting *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981)). Therefore, to state a claim for outrage, the plaintiff must establish that "defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Thomas*, 624 So. 2d at 1043. The Alabama Supreme Court has generally recognized outrage claims for "wrongful conduct in the family-burial context," "barbaric methods employed to coerce an insurance settlement," and "egregious sexual harassment." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal

citations omitted); *see Grantham v. Vanderzyl*, 802 So. 2d 1077, 1081 (Ala. 2001) (surgeon throwing patient's blood on nurse did not rise to level of outrage); *Perkins v. Dean*, 570 So. 2d 1217, 129 (Ala. 1990) (extramarital affair between social worker and plaintiff's wife did not rise to level of outrage). Ruhl has pleaded no facts suggesting that he has suffered any mental distress except for conclusory allegations, nor does the defendants' alleged conduct rise to the level of being truly outrageous. Accordingly, Count VII is due to be dismissed.

*E. The Judicial Defendants and the Attorney General are Entitled to Immunity*

The court turns next to the judicial, prosecutorial, and Eleventh Amendment immunity defenses raised by the judicial defendants and the Attorney General.

## 1. Judicial Immunity

It is well settled that "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their official judicial capacity unless they acted in 'clear absence of all jurisdiction.'" *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (citing *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Simmons v. Conger*, 86 F.3d 1080, 1084–85 (11th Cir. 1996)). Absolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation. *Burns v. Reed*, 500 U.S. 478, 479 (1991). Besides protecting the finality of judgments and discouraging inappropriate collateral attacks, judicial immunity also protects judicial independence by

insulating judges from vexatious actions prosecuted by disgruntled litigants. *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). "[T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have." *Forrester v. White*, 484 U.S. 219, 226 (1988). Indeed, "[i]f judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentive for judges to avoid rendering decisions likely to provoke such manifestly detract independent and impartial adjudication." *Id.* at 226–27 (internal citations omitted).

Accordingly, the Supreme Court has set forth a two-part test for determining when a judge is liable for damages: "(1) whether the judge dealt with the plaintiff in a judicial capacity, and (2) whether the judge acted in the clear absence of all jurisdiction." *Simmons*, 86 F.3d at 1084–85 (citing *Stump*, 435 U.S. at 362). Ruhl's complaint asserts the judicial defendants' rulings harmed him, making it clear that they interacted with him in their judicial capacity. Moreover, he does not argue that any of the judicial defendants acted in the absence of jurisdiction, but rather assails judicial immunity itself, arguing that it unconstitutionally creates "titles of nobility" for judges. The court disagrees, and finds that judicial immunity applies. Accordingly, all claims against the judicial defendants (Counts I, II, IV, VI, VII, and VIII) are due to be dismissed.

## 2. Eleventh Amendment Immunity

Alternatively, all of Ruhl's claims against the judicial defendants, as well as his claims against the Attorney General, are due to be dismissed because these defendants are entitled to Eleventh Amendment immunity. Under the Eleventh Amendment, "[t]he judicial power of the United States shall not be construed to extend to any suit . . . against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. This doctrine extends to cover a state official sued in his or her official capacity where the plaintiff seeks money damages, because such lawsuits are considered suits against the state itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Therefore, to the extent that the judicial defendants and the Attorney General were acting in their official capacity "pursuant to the power [they] possessed by state authority," *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522–23 (11th Cir. 1995) (internal citations omitted), and in the absence of any claim for prospective relief against them, all claims against them (Counts I, II, IV, VI, VII and VIII for the judicial defendants and Count VIII for the Attorney General) are due to be dismissed.[5]

---

[5] The claims against the Attorney General also fail because "prosecutors have absolute immunity for all activities that are 'intimately associated with the judicial phase of the criminal process.'" *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010) (quoting *Van de Kamp v. Goldstein*, 555

### G. Ruhl Cannot Show Unjust Enrichment

The court turns finally to the sole remaining claim, Count III, which is asserted against Spear. Ruhl contends that Spear has been unjustly enriched by her failure to pay court-ordered support costs and by the cost of litigation Ruhl has incurred across his various lawsuits. "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and in good conscience to disallow one to be enriched at the expense of another." *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1123 (Ala. 2003). "In order for a plaintiff to prevail on a claim of unjust enrichment, the plaintiff must show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2004) (internal citations and quotation marks omitted). "One is unjustly enriched if [her] retention of a benefit would be unjust." *Id.* To demonstrate this unjustness, the plaintiff must show that

---

U.S. 335, 341 (2009)). The immunity centers on "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Accordingly, absolute prosecutorial immunity "extends to a prosecutor's acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). By Ruhl's own admission, "Defendant Luther Strange is made a party defendant in his official capacity as Attorney General of the State of Alabama and pursuant to his obligation to defend the laws of the State of Alabama." Doc. 16 at 12. The only claim alleged against the Attorney General is that he has failed to enforce Spear's child support obligations, which obviously addresses his official function. Doc. 1 at 20–21. Thus, Ruhl tacitly concedes that the Attorney General is entitled to prosecutorial immunity.

either "(1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Id*. at 654–55 (internal quotation marks omitted).

Ruhl, however, has not alleged that Spear has received any benefits. Rather, he asserts that Spear's failure to pay court-ordered support and his own legal fees provides a basis for his claim. He cites to no cases that stand for the proposition that failure to pay qualifies as a form of unjust enrichment under Alabama law, nor has the court's independent research uncovered any. However, even assuming that Ruhl has sufficiently alleged that Spear has received a benefit, he still fails to demonstrate that there was either a mistake of fact or unconscionable conduct present. *See Mantiply*, 951 So. 3d at 654–55. Accordingly, Count III is also due to be dismissed.

## IV. CONCLUSION

For the reasons explained above, namely that the court lacks jurisdiction over all claims alleging harm resulting from state court judgments, that the statute of limitations for the § 1983 and § 1985 actions has elapsed, that Ruhl lacks standing to bring criminal charges, that the judicial defendants and the Attorney General are entitled to immunity against all claims brought against them, and that Ruhl has failed to plead his remaining claims against Spear, the defendants'

motions to dismiss are granted. Accordingly, Ruhl's request for a preliminary injunction and his motion to stay proceedings is moot. The court will enter a separate order consistent with this opinion.

Done the 28th day of August, 2015.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE